ANTHONY M. BARNES (Bar No. 199048)
Email: amb@atalawgroup.com
KENYA S. ROTHSTEIN (Bar No. 340854)
Email: ksr@atalawgroup.com
AQUA TERRA AERIS LAW GROUP LLP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
Phone: (917) 371-8293

*Attorneys for Plaintiff*
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a California non-profit association,<br><br>        Plaintiff,<br><br>    v.<br><br>LINDE, INC., a Delaware corporation,<br><br>        Defendant. | Civil Case No.: 4:23-cv-06501-DMR<br><br>**NOTICE OF LODGING OF [PROPOSED] CONSENT DECREE; REQUEST FOR ENTRY OF [PROPOSED] CONSENT DECREE** |

1    WHEREAS, on December 20, 2023, CALIFORNIA SPORTFISHING PROTECTION

2  ALLIANCE ("Plaintiff") and LINDE, INC. ("Defendant") (collectively, "the Parties") agreed on a

3  tentative settlement resolving the issues raised in Plaintiffs' complaint; and

4    WHEREAS, on December 22, 2023, Plaintiff filed a Notice of Tentative Settlement and

5  requested the Court not sign the Consent Decree until a mandatory period for comment by the

6  United States had passed pursuant to United States Code, title 33, section 1365(c)(3) and Code of

7  Federal Regulations, title 40, section 135.5 (ECF #09); and

8    WHEREAS, on February 2, 2024, the United States Department of Justice notified Plaintiff

9  via electronic mail that the United States does not object to the Court's entry of the Consent Decree

10  into judgment; as the Agencies have indicated that they have no objection to entry, the Court may

11  now enter the [Proposed] Consent Decree, which includes a request that the Court retain jurisdiction

12  to enforce the terms of the [Proposed] Consent Decree if necessary.

13    WHEREAS, on February 5, 2024, Plaintiff submitted a [Proposed] Consent Decree to the

14  Court for approval and entry.

15    THEREFORE, Plaintiff hereby requests the Court sign the [Proposed] Consent Decree, a

16  true and correct copy of which is attached to this Notice of Lodging as "Exhibit 1," and enter the

17  Consent Decree as judgment.

18

19  Dated: February 5, 2024                    Respectfully submitted,

20

21                                  /s/ Anthony M. Barnes

22                                  Anthony M. Barnes
                                    Kenya S. Rothstein

23                                  AQUA TERRA AERIS LAW GROUP
                                    Attorneys for Plaintiff

24                                  CALIFORNIA SPORTFISHING
                                    PROTECTION ALLIANCE

25

26

27

28

NOTICE OF LODGING OF [PROPOSED] CONSENT DECREE; REQUEST FOR ENTRY OF
[PROPOSED] CONSENT DECREE

# EXHIBIT 1

Anthony Barnes (Bar No. 199048)
Email: amb@atalawgroup.com
Jason Flanders (Bar No. 238007)
Email: jrf@atalawgroup.com
AQUA TERRA AERIS LAW GROUP LLP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
Telephone: (917) 371-8293

*Attorneys for Plaintiff*
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LINDE INC., a Delaware corporation,<br><br>Defendant. | Case No.: 4:23-cv-06501-DMR<br><br>**[PROPOSED] CONSENT DECREE** |

1  **CONSENT DECREE**

2       **WHEREAS,** California Sportfishing Protection Alliance (hereinafter "CSPA") is a non-

3  profit entity dedicated to protecting California surface waters from pollution and degradation,

4  among other objectives.

5       **WHEREAS**, Linde Inc. ("Linde" or "Defendant") owns and operates a facility at 2000

6  Loveridge Rd., Pittsburg, CA 94565 in Contra Costa County ("Facility").

7       **WHEREAS**, the Facility is categorized under Standard Industrial Classification ("SIC")

8  Code 2813 covering establishments primarily engaged in manufacturing industrial gases (including

9  organic) for sale in compressed, liquid, and solid forms.

10      **WHEREAS**, stormwater discharges associated with industrial activity at the Facility are

11  regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No.

12  CAS000001 [State Water Resources Control Board], Water Quality Order 97-03-DWQ, and as

13  amended by Water Quality Orders Nos. 2015-0057-DWQ, 2015-0122-DWQ and Order 2018-0028-

14  DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §

15  1251 et seq. ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

16      **WHEREAS**, Defendant's operations at the Facility result in discharges of pollutants into

17  waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33

18  U.S.C. §§ 1311(a), 1342;

19      **WHEREAS**, the General Permit requires all permittees, including Defendant, to comply

20  with, inter alia, the following mandates: (1) develop and implement a stormwater pollution

21  prevention plan ("SWPPP") and a stormwater monitoring implementation plan ("MIP"), (2) control

22  pollutant discharges using, as applicable, best available technology economically achievable

23  ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants

24  through the development and application of Best Management Practices ("BMPs"), which must be

25  included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to

26  comply with any and all applicable Water Quality Standards ("WQS"), and (4) implement a

27  monitoring and reporting program designed to assess compliance with the Permit;

28

1

**WHEREAS**, on May 11, 2023, Plaintiff issued a notice of intent to file suit ("60-Day Notice") addressed to Defendant and Linde Gas & Equipment Inc. with copies to the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Water Board"), the Executive Director of the San Francisco Bay Regional Water Quality Control Board ("Regional Water Board"), the U.S. Attorney General of the U.S. Department of Justice, and the Regional Administrator of the EPA Region IX, alleging violations of the Clean Water Act and the General Permit, Water Quality Order No. 2014-0057-DWQ and amended by Order No. 2015-0122 –DWQ and incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Loads ("TMDL") Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, and as subsequently amended by Order 2018-0028-DWQ (effective July 1, 2020) ("General Permit" or "Stormwater Permit"), at the Facility;

**WHEREAS**, on December 18, 2023, CSPA filed a complaint against Linde in the Northern District of California, Civil Case No. 3:23-cv-06501-DMR ("Complaint") alleging violations of the General Permit and CWA based on the 60-Day Notice;

**WHEREAS,** Defendant neither admits nor denies the allegations set forth in the 60-Day Notice and the Complaint relating to the Facility;

**WHEREAS**, Plaintiff and Defendant (collectively "Settling Parties" or "Parties"), without adjudication of Plaintiff's claims or any admission of liability by Defendant, agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings;

**WHEREAS**, all actions taken by the Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.    The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

[PROPOSED] CONSENT DECREE

2.     Venue is appropriate in the Northern District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District;

3.     The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4.     CSPA has standing to bring this action;

5.     The Court shall retain jurisdiction over this action for purposes of interpreting, modifying or enforcing the terms of this Consent Decree.

## I.   OBJECTIVES

6.     It is the express purpose of the Setting Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by CSPA in its 60-Day Notice and Complaint.

7.     In light of this purpose and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.  AGENCY REVIEW AND CONSENT DECREE TERM

### A.   AGENCY REVIEW OF CONSENT DECREE

8.     Agency Review. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies"), within three (3) business days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Defendant. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

9.     Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order coordinate the Court's calendar with the 45-day review period.

10.     Entry of Consent Decree. Following expiration of the Federal Agencies' 45-day review period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B. EFFECTIVE DATE AND TERM OF CONSENT DECREE**

11.     Effective Date. The Effective Date of this Consent Decree shall be the date of entry by the Court.

12.     Term & Termination. This Consent Decree shall terminate upon the earlier of the following events provided there are no pending dispute resolution proceedings that have been initiated in accordance with Section IV of this Consent Decree: (a) three (3) years from the Effective Date; (b) June 30, 2025 if there have been no annual or instantaneous maximum Numeric Action Level ("NAL") exceedances, as defined by the Permit, since the Effective Date; or (c) five (5) days after notice of an approval for a "Notice of Termination" ("NOT") as that term is defined in the General Permit, provided all monetary requirements under the Consent Decree are satisfied at the time at the time the Facility receives NOT approval.  If any Dispute Resolution proceeding in accordance with Section IV of this Consent Decree are pending upon the triggers of the earlier of the three events enumerated above, then the Consent Decree will terminate within the earlier of fifteen (15) days of notice by the Settling Party that invoked Dispute Resolution that the dispute has been fully resolved or an order of the Court resolving the dispute and terminating the Consent Decree.

**III. COMMITMENTS OF THE SETTLING PARTIES**

**A. STORMWATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES**

13.     Current and Additional Best Management Practices: In addition to maintaining the current Best Management Practices ("BMPs") described in the Facility's Stormwater Pollution Prevention Plan ("SWPPP"), Defendant shall develop and implement the following BMPs within forty-five days of the Effective Date:

    a.     Defendant shall institute a pre-rain protocol throughout the wet season involving inspection of any filters and wattles deployed at the site, removal of any exposed waste material, and relocation of uncontained debris bins and trash cans under cover;

      b.   Defendant shall investigate whether the two drain inlets towards the northern end of Drainage Area 1 contribute runoff to Outfall 1; if confirmed, prior to September 15 annually, Defendant shall secure new media filtration socks and install new witch-hat type filters into the two drain inlets;

      c.   Defendant shall inspect operation work areas during daily operations to ensure adequate implementation and maintenance of operational procedures and control measures;

      d.   Defendant shall perform maintenance activities only in designated work areas or beneath covered maintenance areas; and should outdoor vehicle or equipment maintenance activities be required, Defendant shall place absorbent cover material beneath all maintenance activity areas and immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground;

      e.   During the wet season, Defendant shall maintain biochar-based filtration socks around the primary discharge point, according to manufacturer specifications and replace the filtration socks when degraded or ineffective;

      f.   Defendant shall train all team members implementing the various compliance activities of the General Permit on proper operational procedures and pollution control measures at the time of initial hire, then annually thereafter.

The Parties acknowledge that further BMP implementation may be required, potentially including those that achieve BAT/BCT, in order to meet the General Permit's Receiving Water Limitations that require stormwater discharges not cause or contribute to an exceedance of any applicable water quality standards contained in the applicable Regional Board's Basin Plan. This is reflected in the phased approach in this Consent Decree, including the evaluation and implementation of additional BMPs, if deemed necessary, following the 2023-2024 Reporting Years and beyond.

    **B.  Sampling at the Facility**

    14.    Defendant shall develop a monitoring program consistent with the General Permit. During the Term of this Consent Decree, Defendant shall collect and analyze samples of stormwater discharge from each Discharge Location designated in the SWPPP from at least four (4) qualifying

storm events ("QSE") as required by the General Permit (i.e., two QSEs during the first half of the Reporting Year[1] and two QSEs during the second half of the Reporting Year). A QSE, as defined by the General Permit, is a storm that produces a discharge from at least one (1) drainage area and is preceded by forty-eight (48) hours with no discharge from any drainage area. If Defendant fails to collect samples as required by this Consent Decree and the General Permit, Defendant shall provide notice to Plaintiff within twenty (20) days of the data a sample should have been collected but was not If, prior to February 1 of a reporting year, Linde has collected samples from two (2) or fewer qualifying storm events, Linde shall, to the extent feasible, collect samples during as many QSEs as necessary until a minimum of 4 storm events have been sampled for the reporting year. No two (2) samples may be from the same storm event.

15.     <u>Sampling Parameters</u>: All samples collected in accordance with the General Permit and this Consent Decree shall be analyzed for the parameters listed in Table 1.

16.     <u>Methods and Analyses:</u> All samples collected in accordance with the General Permit and this Consent Decree shall be analyzed using the methods specified in the General Permit. Analysis of pH will be conducted using a calibrated portable instrument or, alternatively, in accordance with the methods provided for in 40 C.F.R. Part 136, as permitted by the General Permit.

17.     <u>Reporting</u>: Defendant shall provide complete laboratory results of all samples collected at the Facility and analyzed in accordance with the General Permit and this Consent Decree to CSPA within twenty (20) days of receiving the sampling results.

**C. REDUCTION OF POLLUTANTS IN DISCHARGES**

18.     <u>Table 1 Numeric Limits</u>: As of the Effective Date, and for the remainder of the term of this Consent Decree, if stormwater samples demonstrate NAL exceedances, as defined in the General Permit, when compared to the applicable NAL values in the General Permit (and contained below in Table 1) in a single reporting year, Defendant shall comply with the action plan requirement set forth below.

---

[1] A Reporting Year is defined as July 1 through June 30.

TABLE 1

| Analytes | NAL Values | Source of Limit |
|---|---|---|
| Total Suspended Solids | 100 mg/L | General Permit |
| Nitrate+Nitrite-Nitrogen | 0.68 mg/L | General Permit |
| Oil & Grease | 15 mg/L | General Permit |
| Iron | 1 mg/L | General Permit |
| Aluminum | 0.75 mg/L | General Permit |
| pH | 6.5-8.5 s.u. | Basin Plan |

19. <u>Action Plan for Table 1 Exceedances</u>: If stormwater samples demonstrate an NAL exceedance, as defined in the General Permit, for any analytes in Table 1 Defendant shall prepare and submit to CSPA an Action Plan by July 31 of the reporting year during which the exceedance(s) occurred and the requirement in this paragraph is triggered.

    a. <u>Action Plan Requirements</u>. Each Action Plan submitted shall at a minimum: (1) identify the NAL exceedance(s); (2) explain the possible causes and/or sources of each exceedance; (3) identify any additional BMPs that will be implemented to reduce and/or eliminate the levels observed in the stormwater samples to achieve compliance with the numeric limit(s), as well as the design plans and calculations of these additional BMPs; and (4) include a schedule for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1 of the upcoming Reporting Year. Defendant shall notify CSPA in writing when an Action Plan has been implemented.

        i. If an Action Plan is required following the 2023-2024 Reporting Year, the following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges.

            (a) Hydrologic Controls: Installing additional berms or equivalent structural controls to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

(b)  Treatment Systems: Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

(c)  Evaluation of Existing BMPs: Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

ii.  If an Action Plan for Nitrate+Nitrite-Nitrogen is required following the 2024-2025 Reporting Year under the terms of this Consent Decree, then Defendant agrees to consider implementing a range of additional advanced BMPs, including, but not limited to:

(a)  Evaluating the potential use of woodchip bioreactors for nitrate management, such as grading stormwater conveyances to flow into and through a trench or basin filled with woodchips prior to discharge at Outfall 1.

b.  Action Plan Review: CSPA shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving CSPA's proposed revisions to an Action Plan, Defendant shall consider each of CSPA's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

[PROPOSED] CONSENT DECREE

### D. VISUAL OBSERVATIONS

22.    Stormwater Discharge Observations: During the life of this Consent Decree, Defendant shall conduct visual observations during the Facility's operating hours during every rain event that produces a discharge at all locations where stormwater is discharged from the Facility.

23.    Non-Stormwater Discharge Observations: During the life of this Consent Decree, Defendant shall conduct monthly non-stormwater visual observations at each discharge location.

24.    Visual Observations Records: Defendant shall maintain observation records to document compliance with paragraphs 22 and 23 and shall provide CSPA with a copy of those records within fourteen (14) days of receipt of a written request from CSPA for those records.

25.    Employee Training Program: During the term of this Consent Decree, Defendant shall comply with all employee training requirements in the Facility SWPPP and General Permit. Defendant shall also provide CSPA with a copy of training records required to be maintained by the General Permit within fourteen (14) days of receipt of a written request.

26.    SWPPP and Monitoring Implementation Plan ("MIP") Revisions and Update: Within thirty (30) days of the Effective Date, Defendant shall amend the Facility's SWPPP and MIP to incorporate the requirements in this Consent Decree.  Defendant agrees to submit the updated SWPPP and MIP to CSPA upon completion for review and comment.

    a.    Review of SWPPP and/or MIP: CSPA shall have thirty (30) days from receipt of the amended SWPPP and/or MIP to propose any changes. Within thirty (30) days of receiving CSPA's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is no incorporated;

    b.    Defendant shall revise the SWPPP and MIP if there are any material changes in the Facility's operations, including but not limited to changes in stormwater discharge points or BMPs within thirty (30) days of the changes, which will be subject to CSPA's review and comment as provided in paragraph 26 (a) above.

    c.    The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP or MIP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below.

### E.  COMPLIANCE MONITORING AND REPORTING

27.     Site Inspections: Every year during the life of this Consent Decree, CSPA may conduct one annual site inspection ("Site Inspection") for the purpose of ensuring compliance with this Consent Decree and the Industrial General Permit. Any Site Inspection shall occur during normal business hours, and CSPA will provide Defendant with as much notice as possible—but at least forty-eight (48) hours' notice prior to a Site Inspection in anticipation of wet weather, and seventy-two (72) hours' notice during dry weather. Notice will be provided by telephone and electronic mail to the individual(s) designated below at paragraph 52. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial stormwater discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to CSPA. CSPA's representative(s) may observe the split sample(s) being collected by Defendant's representative. CSPA shall be permitted to take photographs or video recording during any Site Inspection.

28.     Document Provision. During the term of this Consent Decree, Defendant shall notify and submit documents to CSPA as follows:

a.     Defendant shall provide Plaintiff with a copy of all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to stormwater quality at the Facility that are submitted to the Regional Board or the State Board within seven (7) days of submission. Alternatively, if the submission to the Regional Board or State Board is made via the State Board's Stormwater Multiple Application and Reporting Tracking System ("SMARTS"), Defendant may satisfy this requirement by providing notice to Plaintiff via electronic mail that said results have been uploaded to SMARTS within seven (7) days of uploading said documents.

b.     Any compliance document, inspection report, written communication and/or correspondence, or any document related to stormwater quality at the Facility received by Defendant from the Regional Board or the State Board shall be sent to CSPA within seven (7) days of receipt by Defendant.

29.    <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree by paying Plaintiff Five Thousand Dollars ($5,000.00). Such payment shall be made within forty-five (45) days of the Effective Date and made payable to: Aqua Terra Aeris Law Group LLP, Attn: Anthony M. Barnes and delivered by overnight carrier to Aqua Terra Aeris Law Group, 490 43rd Street, Suite 108 Oakland, CA 94609.

### F.  ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, AND INTEREST

30.    <u>Environmental Mitigation Project</u>: To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in Sacramento-San Joaquin River Delta, and in recognition of the good faith efforts of Defendant to comply with all aspects of the General Permit and CWA, and in lieu of payment of any penalties, which have been disputed by Defendant but may have been assessed had this action been adjudicated in a manner adverse to Defendant, Defendant agrees to make a total payment of Sixteen Thousand Dollars ($16,000.00) to the Rose Foundation made within sixty (60) days of the Effective Date, payable to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th St APT 102, Oakland, CA 94607. Defendant shall provide CSPA with a copy of such payment.

31.    <u>CSPA's Fees and Costs</u>: Defendant agrees to pay a total of Forty-Eight Thousand ($46,000.00) to CSPA to partially reimburse Plaintiff for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. The payment shall be made within forty-five (45) days of the Effective Date and made payable to: Aqua Terra Aeris Law Group LLP, Attn: Anthony M. Barnes and delivered by overnight carrier to Aqua Terra Aeris Law Group, 4030 Martin Luther King Jr. Way, Oakland, CA 94609.

32.    <u>Interest on Late Payments</u>: Defendant shall pay interest on any payments, fees, or costs owed to CSPA under this Consent Decree that CSPA has not received by the due date. The interest shall accrue starting the first day after the payment is due and shall be computed at a rate of (4% per year. Interest on late payments shall be made payable to CSPA and sent to the address listed in paragraph 52, below.

## IV. DISPUTE RESOLUTION

33.     This Court shall retain jurisdiction over this matter for the term of this Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

34.     Informal Dispute Resolution. If a dispute under this Consent Decree arises, either Party may invoke the informal dispute resolution procedures of this Paragraph by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within twenty-one (21) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.  The Settling Parties will discuss the dispute and make reasonable efforts to devise a mutually acceptable plan to resolve the dispute. The Settling Parties may, upon mutual written agreement, extend the time to conduct the meet and confer discussions. If the meet and confer discussions fail to resolve the dispute, the Settling Parties shall request a magistrate judge of this court to conduct a mediation session pursuant to the procedures as the magistrate judge may require. The mediation session shall be held within forty-five (45) days of the conclusion of the meet and confer discussions, or as soon thereafter as the schedule of the magistrate judge will permit.

35.     Formal Dispute Resolution. If the Parties cannot resolve the dispute pursuant to the informal dispute resolution procedures described above in paragraph 34, either Party may initiate the formal dispute resolution procedures in this Paragraph by filing an appropriately titled motion before the United States District Court for the Northern District of California to determine whether either Party is in violation of the Consent Decree and, if so, to require the violating Party to remedy any violation identified by the District Court and the timeframe within which the remedy must be implemented.  In resolving any dispute arising from this Consent Decree before the Court, the Parties shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

## V.  MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

36.   Plaintiff's Waiver and Release of Defendant. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were or could have been raised based on the facts alleged in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

37.   Defendant's Waiver and Release of Defendant. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

## VI.  MISCELLANEOUS PROVISIONS

38.   No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

39.   Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

40.   Authority. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

41.   Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the

Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

42.   Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

43.   Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

44.   Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

45.   Choice of Law. The laws of the United States shall govern this Consent Decree.

46.   Diligence: To the extent applicable, Defendant shall diligently file and pursue all required permit applications for any structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

47.   Effect of Consent Decree: Compliance with this Consent Decree does not mean that Defendant is complying with the Industrial General Permit, the Clean Water Act, or any other law, rule, or regulation.

48.   Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

49.   Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

50.    Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

51.    Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

52.    Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

If to Plaintiff:
Anthony M. Barnes
Aqua Terra Aeris Law Group LLP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
amb@atalawgroup.com

If to Defendant:
Erika Spanton
Beveridge & Diamond
600 University Street, Suite 1601
Seattle, WA 98101
espanton@bdlaw.com

[PROPOSED] CONSENT DECREE

1    With copies to:                              With copies to:
2    Chris Shutes, Executive Director            Scott Press
     California Sportfishing Protection Alliance Linde Inc.
3    1608 Francisco Street                       10 Riverview Drive
     Berkeley, CA 94703                          Danbury, CT 06810
4    blancapaloma@msn.com                        scott.press@linde.com

5                                                Erik Liebrecht
6                                                Linde Inc.
                                                 10 Riverview Drive
7                                                Danbury, CT 06810
                                                 Erik.Liebrecht@linde.com
8
9                                                Michael Catania
                                                 Linde Inc.
10                                               2000 Loveridge Rd.
                                                 Pittsburg, CA 94565
11                                               michael.catania@linde.com

12   Notifications of communications shall be deemed submitted three (3) days after the date that they

13   are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via

14   email by the receiving party. Any change of address or addresses shall be communicated in the

15   manner described above for giving notices.

16        53.    If for any reason the DOJ or the District Court should decline to approve this

17   Consent Decree in the form presented, the Parties shall use their best efforts to work together to

18   modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District

19   Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that

20   is also acceptable to the District Court, this Consent Decree shall immediately be null and void as

21   well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and

22   California Evidence Code section 1152.

23        The Parties hereto enter into this Consent Decree and submit it to the Court for its approval

24   and entry as a final judgment.

25        IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date

26   first set forth below.

27

28

[PROPOSED] CONSENT DECREE

1    APPROVED AS TO CONTENT

2

3

4    Dated:    December 19, 2023        By: _____

5                                      Chris Shutes, Executive Director
California Sportfishing Protection Alliance

6

7    Dated: December 20 , 2023        By: _____

8                                      Marcos Cuevas, Vice President, West
Region

9                                      Linde Inc.

10

11    APPROVED AS TO FORM

12

13    Dated: December 19, 2023          By: _____

14                                      Anthony M. Barnes
Attorney for Plaintiff

15                                      California Sportfishing Protection Alliance

16

17

18    Dated: December 19 , 2023        By: _____

19                                      Erika Spanton
Attorney for Defendant
Linde Inc.

20

21

22

23

24

25

26

27

28

---

17

[PROPOSED] CONSENT DECREE

1

**IT IS SO ORDERED.**

2

3

4    Dated: 2/9/2024                          NORTHERN DISTRICT OF CALIFORNIA

5

6    _____

7    HONORABLE DONNA M. RYU
     Chief Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] CONSENT DECREE